IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN C. BUSH, | : | |
| Plaintiff, | : | Case No. 2:05-CV-667 |
| v. | : | Judge Holschuh |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, | : | Magistrate Judge Kemp |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Steven Bush filed suit against his employer, the Ohio Department of Rehabilitation and Correction ("ODRC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Bush, a Caucasian male, alleges that Defendant discriminated against him on the basis of his race and gender when it hired Gwendolyn Bennett, an African-American female, to fill the position of Social Work Supervisor 1 instead of promoting him. This matter is currently before the Court on Defendant's Motion for Summary Judgment. (Record at 22).

**I.   Background and Procedural History**

Plaintiff, who had worked for many years as a business manager and counselor in substance abuse treatment centers, began his employment with the Southeastern Correctional Institution ("SCI") on May 17, 2004 as a Correctional Program Coordinator. (Bush Dep. at 45, 50). As a classified employee of the ODRC, his first 180 days of employment were classified as a probationary period. O.A.C. §§ 123:1-19-01 and 123:1-19-02(A). On July 9, 2004, SCI posted a vacancy for the position of Social Work Supervisor 1. This position would have been a

significant promotion had Plaintiff been hired for the opening.  Although Plaintiff was still within his probationary period, he applied for the vacancy along with twelve other applicants, including Gwendolyn Bennett, an African-American female, who was eventually hired for the position. (Curtis Dep. Exhs. 7, 12).

After Personnel Officer Yolanda Curtis screened the applications to determine which applicants met the minimum qualifications, Darryl Graves, SCI's Deputy Warden of Special Services, used a Subject Matter Expert Screening ("SME") form to determine which applicants would be offered interviews.  Graves assigned point values for education, job-related experience, job-related training, and the presentation of application materials. Bennett received 14 points on the SME and Plaintiff received 12 points.  (See Compl. Exhs. 2-4).  Based on their SME scores, Bennett, Plaintiff, and two other applicants were offered interviews.

The interview panel consisted of Graves, who is African-American, and two Caucasian women.  (Graves Dep. at 161; Curtis Dep. Exh. 7).  In addition to a forty-five minute interview with the 3-judge panel, applicants were required to complete a short writing exercise describing a correctional alcohol and other drug continuum of care.  (Graves Dep. Exhs. 19-A, B, C). Following the interviews, the 3-judge panel unanimously recommended Bennett for the job. (Graves Dep. at 160).[1]  Graves testified at his deposition that Bennett not only did better on the writing exercise, but also exhibited better leadership skills.  (Id. at 157-59).

---

[1] Two additional applicants, whose applications had been submitted online and inadvertently overlooked, were later interviewed, but the panel once again unanimously recommended Bennett for the position.  (Curtis Dep. at 128).

Bennett was then asked to complete a "Personal History Statement," which included a more detailed account of her personal, educational, and work history. (Curtis Dep. Exh. 3). On that form, Bennett disclosed that, in 2004, she had been terminated from a position with Ohio Department of Youth Services because she "did not fit." (Id.). Following the submission of this document and a background check, Curtis compiled a formal "Recommendation for Personnel Selection." After the appropriate officials approved it, Curtis wrote to Bennett on November 10, 2004 to inform her that she had been hired. (Curtis Dep. at 129-131; Curtis Dep. Exh. 12). Bennett began her employment at SCI on December 13, 2004.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 24, 2005. (Bush Dep. Exh. O). The EEOC issued a right to sue letter on May 13, 2005. (Compl. Exh. 1). Plaintiff filed his Complaint with this Court on July 7, 2005, alleging that Defendant discriminated against him on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964, when it failed to promote him to the Social Work Supervisor I position. Defendant has moved for summary judgment.

Defendant argues that Plaintiff cannot establish a prima facie case of reverse discrimination because: (1) Plaintiff provides no evidence of background circumstances to support a suspicion that Defendant is that unusual employer who discriminates against the majority; (2) Plaintiff was still on probation when he applied for the position and therefore was not qualified for the job; and (3) Plaintiff and Bennett were not similarly situated in terms of qualifications. Defendant contends that Bennett was hired because she was the superior candidate. Defendant further argues that Plaintiff has failed to present sufficient evidence that this reason was pretextual.

**II.     Summary Judgment Standard**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as

well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  Anderson, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**III.     Discussion**

Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964 by discriminating against him on the basis of race and gender when it failed to hire him for the position of Social Work Supervisor 1 in the fall of 2004. That statute makes it an unlawful for any employer to refuse or fail to hire, or discharge any individual on the basis of that individual's race, color, sex, national origin, or religion. 42 U.S.C. § 2000e-2.  Defendant has moved for summary judgment on both claims presented in this suit.

### A. Relevant Law

In an employment discrimination case, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or, using the McDonnell Douglas framework set forth below, by presenting circumstantial evidence from which a jury may infer a discriminatory motive underlying an adverse employment action. See Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). A facially discriminatory employment policy or an express statement by a decisionmaker of a desire to not hire certain employees because they belong to a protected class would constitute direct evidence of discrimination. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

However, where the plaintiff has only circumstantial evidence of a discriminatory motive, claims are analyzed under the framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination. The elements of a prima facie case vary somewhat depending on the theory of discrimination being asserted. If the plaintiff is successful in establishing a prima facie case, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. at 802-03. If the employer articulates such a reason, the presumption of discrimination drops away, leaving only the issue of "discrimination *vel non*." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000). The plaintiff must then prove by a preponderance of the evidence that the reason

offered was pretextual.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the decision; or (3) the proffered reason was insufficient to motivate the decision.  See Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994); Peters v. Lincoln Elec. Co., 285 F.3d 456, 471-72 (6th Cir. 2002).  The plaintiff has the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against him.  Burdine, 450 U.S. at 253.

  **B.**  **Failure to Promote**

In this case, because Plaintiff has presented no direct evidence of race or gender discrimination, he must rely on this burden-shifting framework. First, he must establish a prima facie case of race or gender discrimination. To establish a prima facie case in the context of a "failure to promote" claim, Plaintiff must prove that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees with similar qualifications who were not members of the protected class received promotions.  Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 719 (6th Cir. 2006); Sutherland v. Michigan Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003). Defendant claims that Plaintiff can satisfy only the third prong of the prima facie case.

Plaintiff must first establish that he is a member of a protected class. The Supreme Court has held that Title VII's protections extend beyond members of classes that have historically been subject to discrimination.  The statute protects against *all* employment discrimination on the basis of race, color, sex, national origin, and religion.  McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 279 (1976); Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971).  Therefore,

the fact that Plaintiff is a Caucasian male does not necessarily foreclose recovery under Title VII. It does, however, make recovery more difficult. See Briggs v. Potter, 463 F.3d 507, 517 (6th Cir. 2006) ("[a] reverse-discrimination claim carries a different and more difficult prima facie burden."). In cases of reverse-discrimination, the Sixth Circuit has held that, in order to establish the first prong of the prima facie case, the plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 255 (6th Cir. 2002) (quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)); Leadbetter v. Gilley, 385 F.3d 683, 690 (6th Cir. 2004); Sutherland, 244 F.3d at 614-15.

     Plaintiff urges the Court to reject this "background circumstances" requirement. He notes that, in Zambetti, the Sixth Circuit stated that such a requirement "may impermissibly impose a heightened pleading standard on majority victims of discrimination." 314 F.3d at 257. See also Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 n.7 (6th Cir. 1994) (expressing concerns about requiring a "more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts."). But even though the Sixth Circuit has expressed certain misgivings, it has never overturned the "background circumstances" requirement. Under current Sixth Circuit law, Plaintiff must still demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." Zambetti, 314 F.3d at 255. See, e.g., Plumb v. Potter, 212 F. App'x 472, 478 (6th Cir. 2007); Myers v. Cuyahoga County, 182 F. App'x 510, 517 (6th Cir. 2006); Golden v. Town of Collierville, 167 F. App'x 474, 479 (6th Cir. 2006); Briggs, 463 F.3d at 517; Grizzell, 461 F.3d at 719. Defendant argues that Plaintiff has failed to present sufficient evidence to support such a

finding. The Court agrees.

The Sixth Circuit has not clearly defined what type of evidence must be presented to satisfy the "background circumstances" requirement. Several cases, however, are illustrative. In Sutherland, the Court held that a plaintiff "may present evidence of the defendants' unlawful consideration of [gender or race] in employment decisions in the past." 344 F.3d at 615. In Myers v. Cuyahoga County, 182 F. App'x 510 (6th Cir. 2006), the Sixth Circuit held that the plaintiff had satisfied the "background circumstances" requirement by presenting evidence that, to meet the needs of its Hispanic clients, the defendant had a practice of hiring only Hispanic employees. Likewise, in Herendeen v. Michigan State Police, 39 F. Supp. 2d 899, 908 (W.D. Mich. 1999), the court held evidence that the defendant "considered race and gender as factors in promotions and that it sought to maintain a [work]force that reflected the racial makeup of the population it served" was sufficient to satisfy the first prong of the prima facie case. Evidence that the defendant has made hiring and promotion decisions based on an affirmative action plan may also be relevant. See Golden, 167 F. App'x at 479 (noting that defendant had no affirmative action plan and that only a small percentage of employees were minorities).

In this case, Plaintiff has presented absolutely no evidence that Defendant has an affirmative action plan or has ever considered race or gender as a factor in past hiring decisions. Likewise, Plaintiff has presented no statistics concerning the racial makeup of the workforce or the ratio of male to female employees. Instead, as evidence of background circumstances that allegedly support a suspicion that Defendant discriminates against the majority, Plaintiff argues only that: (1) he was more qualified than Bennett; (2) Defendant used subjective criteria in making its decision; and (3) Defendant failed to fully check Bennett's work history and

qualifications.

In support of his claim, Plaintiff cites to Lanphear v. Prokop, 703 F.2d 1311 (D.C. Cir. 1983), and Bishopp v. District of Columbia, 788 F.2d 781 (D.C. Cir. 1986). The Court of Appeals for the District of Columbia has held that "background circumstances" may be shown not only through evidence indicating that this particular employer has some reason or inclination to discriminate against the majority, but also through "evidence indicating that there is *something 'fishy' about the facts of the case that raises an inference of discrimination.*" Harding v. Gray, 9 F.3d 150, 153 (D.C. Cir. 1993) (emphasis added).

In Lanphear, a white male filed suit after he was denied reappointment to his position as a Chief Appeals Officer for the Merit Systems Protection Board following a restructuring of the agency. Although promised that he would automatically be considered for the job, his papers were not given to the screening panel, and he was not interviewed. Instead, in an "abbreviated process," a black candidate was chosen for the position pursuant to an affirmative action mandate that had recently been issued. The person who made the hiring decision did not review the black candidate's supervisory appraisals or his work product, and did not speak to the screening panel about his qualifications. The district court in Lanphear found that the plaintiff had easily established a prima facie case of reverse discrimination; the plaintiff did not appeal this issue. See 703 F.2d at 1315.

In Bishopp, five white male applicants for the position of assistant fire chief filed suit alleging race discrimination after Jefferson Lewis, a black battalion fire chief, was promoted instead. Plaintiffs noted that on only one previous occasion had a battalion fire chief been promoted to assistant fire chief without having first served as a deputy fire chief. The fire chief

11

recommended Lewis for the position even though plaintiffs had more seniority, education and experience. There was unrebutted evidence that the chief was under pressure from blacks in the community to promote Lewis. In addition, the fire department was considering an affirmative action plan. The district court found, and the appellate court agreed, that these facts supported a finding that the defendant had a reason to prefer a black employee over a white employee. See 788 F.2d at 787.

As the court noted in Osborne v. City of Franklin, No. 3:04-00493, 2005 WL 2218693, at *8 (M.D. Tenn. Sept. 12, 2005), it is not clear whether the Sixth Circuit would recognize the D.C. Circuit's alternative method of establishing the requisite background circumstances, *i.e.*, that there is something 'fishy' about the facts of this particular case that raises an inference of discrimination. It appears that the Sixth Circuit requires evidence of past discriminatory practices or an affirmative action plan. Plaintiff has presented no such evidence.

As noted earlier, Plaintiff argues only that he was more qualified than Bennett, that Defendant used subjective criteria in evaluating the applicants, and that Defendant failed to fully check Bennett's work history and qualifications. In the Court's view, these arguments are more properly characterized as pretext arguments, offered to rebut Defendant's claim that Bennett was hired because she was the most qualified person for the job. As the Sixth Circuit noted in Zambetti, "[u]nless plaintiff is able to satisfy prong one, . . . the court does not even reach the pretext arguments." 314 F.3d at 256-57. Nevertheless, assuming *arguendo* that the Sixth Circuit would agree that the requisite "background circumstances" could be established simply by proving that there was something "fishy" about Defendant's decision to hire Bennett, Plaintiff has still failed to produce sufficient evidence from which a reasonable jury could find that the

circumstances surrounding that decision give rise to an inference of discrimination.

Plaintiff's case is easily distinguishable from Lanphear and Bishopp. Notably, in both of those cases, affirmative action plans were either in place or were being considered. In Bishopp, the fire chief was under pressure from the African-American community to promote the African-American candidate, and he made the almost unprecedented decision to promote someone who had not first served as a deputy fire chief. In contrast, in this case, there is no evidence that Defendant was acting pursuant to an affirmative action plan, and absolutely no evidence that Defendant was under any pressure to hire more women or more African-American employees. Nor is there any evidence that Defendant's decision to hire someone from outside the department was unprecedented. Moreover, in contrast to Lanphear, which involved an abbreviated hiring process, Defendant, in this case, posted the job opening for the Social Work Supervisor 1 position, took in many applications, and interviewed candidates of different races and genders prior to offering Bennett the position.

Plaintiff denies that Bennett was the best qualified candidate. He maintains that because he had superior qualifications, Defendant's decision to offer Bennett the position gives rise to an inference of discrimination.[2] Plaintiff contends that Graves' discriminatory animus was apparent at the outset because Graves used an outdated SME form to screen the candidates. According to Plaintiff, if the updated form, which gave greater weight to work-related experience, had been used, Plaintiff would have scored more points than Bennett. Graves testified, however, that he used the older form by mistake (Graves Dep. at 13), and Plaintiff has presented no evidence to

---

[2] Plaintiff had a master's degree in a related field and had experience developing and implementing drug and alcohol treatment programs. He also had some supervisory experience as a business manager for an alcoholism prevention program.

the contrary. It is undisputed that, at the time Graves completed the SME forms and extended offers for interviews, he did not know the race of the applicants. (Id. at 148). Therefore, even if he had a discriminatory animus, he would have had no incentive to use one form over the other. Moreover, Plaintiff suffered no prejudice. The SME scores were used only to determine which applicants would be interviewed. Plaintiff and Bennett were both offered interviews. In addition, the SME scores were not made known to the other members on the interviewing panel, and were not considered in making the hiring decision. (Graves Dep. at 147-48, 183-84).

Plaintiff also argues that Defendant's use of subjective criteria in making the decision to hire Bennett may constitute circumstantial evidence of discrimination. The Sixth Circuit has held that "[t]he use of subjective criteria is permissible in the selection of management positions. However, 'the ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action.'" Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1399 (6th Cir. 1990) (quoting Grano v. Department of Dev. of the City of Columbus, 699 F.2d 836, 837 (6th Cir.1983)). In this case, there is no support for a finding that Defendant's use of subjective criteria was used to disguise discrimination on the basis of race or gender. Graves testified that his conclusion that Bennett was more qualified for the position than Bush was largely based on his review of the writing exercise, in which the candidates were asked to describe a correctional alcohol and other drug continuum of care. Whereas Bush's response was "vague" and "not necessarily descriptive of a continuum of care," Bennett outlined "very clearly the elements of a continuum of care." (Graves Dep. at 157-58). Graves also testified that, during the interview, Bennett exhibited leadership skills that Bush did not. (Id. at 158-59).

Citing Lanphear, Plaintiff next argues that a discriminatory animus may be inferred from Defendant's failure to fully check Bennett's qualifications.[3] The inference of discriminatory animus in Lanphear, however, arose not because the decisionmaker failed to review the candidate's work product or speak to the screening panel about the candidate's qualifications but rather because the whole hiring procedure differed from the norm. See Lanphear, 703 F.2d at 1313 n.8. Standing alone, Defendant's failure to probe more deeply into Bennett's work history does not give rise to an inference of discrimination against Plaintiff. Plaintiff has pointed to no evidence that Defendant subjected Bennett's application to less scrutiny than was usual and cvustomary.

In summary, the Court finds that Plaintiff has failed to present sufficient evidence of "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." Zambetti, 314 F.3d at 255. Because Plaintiff has failed to establish the first prong of a prima facie case of race or gender discrimination, the Court need not address the other arguments raised by Defendant. Defendant is entitled to summary judgment as a matter of law.

---

[3] According to Plaintiff, if Defendant had fully checked Bennett's qualifications and spoken to her supervisors at the Department of Youth Services ("DYS"), Defendant would have discovered that, although Bennett had experience as a supervisor, she was asked to resign from her position as Deputy Superintendent in May of 2002 because of her unsatisfactory supervisory skills. (Exs. 5 and 6 to Curtis Dep.). In March of 2004, Bennett was subsequently removed from an Administrative Assistant position at DYS. On her application, Bennett disclosed that she had been "let go" from her position as an Administrative Assistant; however, she simply said that she left the Deputy Superintendent position for "another job." (Ex. 3 to Bennett Dep.). Graves testified that, at the time of the interview, he does not recall whether Bennett specifically told the panel that she had been removed from the position of Deputy Superintendent. (Graves Dep. at 109). He testified, however, that Bennett "expounded on kind of her whole experience and her time in DYS." (Id. at 103).

15

**IV.     Conclusion**

For the reasons stated above, the Court finds that Plaintiff has failed to establish a prima facie case of discrimination based on race or gender.  The Court therefore **GRANTS** Defendant's motion for summary judgment.  (Record at 22).

**IT IS SO ORDERED.**


Date: October 15, 2007              **/s/ John D. Holschuh**
                                    John D. Holschuh, Judge
                                    United States District Court